F. B. CUSHING, Respondent, v. BENJAMIN W.
FLEMING and REBECCA FLEMING, Appellants.

**Kansas City Court of Appeals, November 2, 1910.**

1. **TAXBILLS: Special Ordinance: Repairs.** Where the paving
   and curbing of a public street are reconstructed under a special
   ordinance, with material substantially the same as that used in
   the former improvement, taxbills issued in payment for said
   reconstruction will not be rendered invalid because there was
   no petition by resident owners of a majority of front feet
   abutting on the said street.

2. ——: **Instructions.** An instruction, where a case is tried
   by the court, serves no purpose except to disclose the theory
   upon which the cause was tried.

3. ——. Where a taxbill shows upon its face that it is for
   preparing and paving, it will be inferred that no curbing was
   done, or that no charge was made for same. It will not be held
   in the absence of evidence, that the work done on the curbing
   was included in the taxbills, from the mere fact that such
   work was done.

Appeal from Buchanan Circuit Court.—*Hon. C. A.
Mosman*, Judge.

REVERSED AND REMANDED *(with directions)*.

*James W. Boyd* for appellant.

(1) The work provided for in the ordinance and
specifications read in evidence in this case conclusively
shows that the work to be done on Sixth street, and
sued for in this case consisted of "repairs" or "repairing." Sec. 5742, R. S. 1899. Even if any part
of the cost charged in the taxbills consisting of "repairing," and such costs are not separated from the
charges made in the bills, and cannot be separated,
then inasmuch as a portion of the amount of the bill
is illegal and void as a charge against the property,

then the whole bill is null and void, and constitutes no lien against property. Joplin ex rel. v. Freeman, 125 Mo. App. 717; Kansas City v. O'Connor et al., 82 Mo. App. 665; Kansas City v. Askew, 105 Mo. App. 84; Johnson v. Duer, 115 Mo. 366; Haag v. Ward, 186 Mo. 325; Perkinson v. Schnaake, 108 Mo. App. 255. (2) There was no proper, legal or valid assignment of the taxbills by the contractor to the plaintiff (respondent). The endorsement on the bills is to the effect that the Phoenix Brick & Construction Company assigned the bills and that the endorsement was signed "F. P. Halsey, Treas." The burden of proving an assignment rested upon the respondent. Whether the alleged construction company is a cor poration, a partnership, or what it is, no one knows. If it is a corporation, there is no evidence, or, at least the evidence is not sufficient in law to show that Mr. Halsey had any authority to assign the bills. If the company is a firm or partnership then he has no authority to assign the paper, as he was not according to the evidence a member of the firm. (3) The respondent's claim is barred by the Statute of Limitation. He did not institute his suit within two years from the time the bills were issued as required by sec. 5743, Ann. Stat. 1906. The bills are dated November 11, 1904, and it is said he filed his petition in the office of the circuit clerk on November 10, 1906. The next term thereafter, that is the return term, was the January term, 1907, which began January 7, 1907, more than fifteen days after the filing of said petition. No summons was issued returnable to that term. In fact no summons was issued until January 19, 1907, and it was returnable to the May term, 1907.

*Charles F. Strop* and *Eugene Silverman* for respondent.

(1) The action is not barred by the statute. The suit was commenced by filing the petition with the clerk of the court and the burden is upon appellants to establish a request or direction by respondent to delay the issuance of summons. This burden they have not met. Brown v. Schock, 27 Mo. App. 351; Lumber Co. v. Wright, 114 Mo. 326; Moore v. Ruxlow, 83 Mo. App. 51; Collum v. Lucksinger, 83 Mo. App. 110. (2) There is no question of "repairs" in this case. The evidence shows that this was a work of reconstruction and sec. 9066, R. S. 1909, has no application to the case. Construction Co. v. Duncan, 130 Mo. App. 695. (3) This court will not review a finding of facts made by the trial court sitting as a jury. The finding of the trial court in a law case is entitled to the same weight as the verdict of a jury and will not be disturbed where there is evidence to support it. Brewing Co. v. City of St. Louis, 209 Mo. 600; Glade v. Mining Co., 129 Mo. App. 443; Morrison v. Bomer, 195 Mo. 535; Scanlon v. Gulick, 199 Mo. 449. The laws governing the improvement of public streets and thoroughfares and governing the issue of special taxbills should be liberally construed. Steffen v. Fox, 124 Mo. 635; Kemper v. King, 11 Mo. App. 129. (4) A substantial compliance with an ordinance, contract or charter is all that is required in order to sustain the validity of a taxbill. Porter v. Paving & Construction Co., 214 Mo. 1; Steffen v. Fox, 124 Mo. 635; Cole v. Skrainka, 105 Mo. 309. (5) The taxbills in evidence made a prima facie case of their validity and of the liability of the property to the charges therein stated. This prima facie case was not overcome. Mo. Ann. Statutes, 1906, sec. 5664; Paving Co. v. Ullman, 137 Mo. 560; Bank v. Woester, 147 Mo. 467.

BROADDUS, P. J.—This is a suit to recover the amount of two taxbills issued as a lien against the property of defendants, for the improvement of a certain street in the city of St. Joseph.

The work was not done on the petition of abutting property owners, but under the provision of a certain special ordinance. The ordinance after reciting that the board of public works, "having determined that certain work and improvements" to a certain street, "is a public necessity," and that all persons had been duly notified of the extent and character of the work, and no objections being filed to the proposed work, ordered that the pavement on Sixth street from the north line of Atchison street . . . be reconstructed with asphaltum and the curbing, where necessary, be reset or renewed with artificial stone curb." The work and improvement to consist of replacing and rebuilding the concrete base where necessary and the reconstruction of the pavement with asphaltum for the full width of the roadway. The work was to be completed within four months, etc. All in accordance with plans and specifications on file, the cost of the work to be assessed and levied as a special tax on and against the real estate fronting on said Sixth street between the points named.

The petition is in two counts on two separate bills issued against two separate pieces of property owned by defendants fronting on said street. The answer contains a general denial and several specific defenses.

First, that the work done on said street was repairing, and that the material used in the improvement was different from the material used in the improvement formerly made next prior thereto, and that a majority of the resident owners of the front feet fronting on said street never at any time presented a petition to any board or council consenting or demanding that the street at said time be improved with any

material different from that with which it had been improved before the alleged improvement. Second, that the contract for the pretended improvement alleged in the petition was let to the highest and not the lowest and best bidder. Third, that the pretended taxbills are on account of the facts hereabove stated, and other facts apparent upon the face of the papers, and also on account of all other facts in connection with said taxbills, illegal and of no validity; and that this suit was not instituted within two years after the taxbills were issued.

The contract was made in compliance with the special ordinance and provided that Acme asphalt be used instead of Trinidad.

The defendant offered evidence tending to show that the improvement of the street next prior to that in question was made with Trinidad asphalt. When said improvement was made the paving consisted of asphaltum, the gutters and curbing being constructed of limestone. At the time of the passage of the ordinance the pavement, guttering and curbing on Sixth street had greatly deteriorated. The original material for the curbing and guttering had already been replaced to a great extent by other material furnished by the city.

The specifications for the new improvement are that, "All the old asphaltum shall be removed from the street, the old concrete base shall be reconstructed where necessary, with new hydraulic cement concrete. New concrete shall be used where no concrete exists. . . . Should the earth where new concrete is used be soft or spongy it must be dug up and replaced with broken stone or with loam well rammed." It was shown that the petition in the case was filed within two years after the taxbills were issued, but process was not issued thereon until after the expiration of that time. But evidence was introduced by plaintiff

tending to show that the delay was not his fault but that of a deputy in the office of the clerk.

There was evidence pro and con as to whether there was any substantial difference between Trinidad and Acme asphalt. Other evidence will be noticed in the progress of the opinion.

The issues were tried before the judge sitting as a jury, and the finding and judgment were in favor of the plaintiff and the defendant appealed. The defendants challenge the correctness of the finding of the court upon the issues of fact. This is unusual, as it is generally conceded that the verdict upon such issues is conclusive as to all parties where such finding is sustained by any substantial testimony. In the first place it is contended that in the work of reconstruction, material was used other than that used in the former improvement of the street and paid for by the property owners. If this is true, the taxbills were void because the improvement was not petitioned for by the resident owners, owning a majority of front feet abutting on the street improved, as required by the statute. [Laws of 1903, section 13, pp. 65, 66.]

The evidence sufficiently showed that although the former pavement consisted of Trinidad asphalt, and that used in the reconstruction was Acme asphalt, they were substantially the same; that there was no difference except in name; that asphalt was asphalt by whatever name called; and that the only difference that could be made between the two was in mixing with sand and cement. But defendant further contends that the work was in the nature of repairs, and if so, the cost of the work was chargeable to the general fund of the city, and not to the property owners. [Sec. 5742, R. S. 1899.] We are, however, of the opinion that the work was in the nature of reconstruction. The street was not repaired in the sense contemplated by the statute, but was a rebuilding almost entirely. The difference between what may be considered repair

and what reconstruction is well illustrated in Caskey v. Edwards, 128 Mo. App. 237; Rackliffe & Gibson v. Duncan, 130 Mo. App. 695.

As to the guttering and curbing, they had mostly been removed. There was very little of the former material used in guttering left, but had been mostly replaced by the city in patching the street. Only ten per cent of the curbing was still extant. Under such conditions it would be absurd to say that the curbing should be reconstructed with limestone when ninety per cent of it consisted of concrete, paid for by the city and not by the property owners. The purpose of the statute was equitable, that is to say, that the property owner should not be compelled to pay twice for material used in the improvement of a street.

The taxbill does not include items for curbing and guttering, but only for paving. The contract did not provide for guttering. That was dispensed with, and the street was paved from curb to curb, and we may reasonably conclude that the space formerly occupied by the guttering was included in the taxbill. The face of the taxbill is for preparing and paving. From this statement we might reasonably infer that no curbing was done by the contractor, or else he did not make a charge for it. It would not do to hold, in the absence of evidence, that the work done on the curbing was included in the taxbill, from the mere fact that such work was done, although we might believe that it was so included.

We are of the opinion that the finding of the court that the action was commenced within two years from the date the taxbills were issued was supported by all the evidence. The delay in issuing the writ of summons was not the fault of the plaintiff, but of the deputy in the clerk's office.

Section two of the ordinance provided that: "The work and improvement herein ordered, shall consist of replacing and rebuilding the concrete base *where*

*necessary* and the reconstruction of the pavement on said street with asphaltum.'' Defendants insist that the words, *''where necessary''* are vague, indefinite and uncertain in meaning. In fact, they do not mean anything at all.'' In view of the condition of the base, mostly covered with asphaltum pavement, we do not see what other words could be used to express what should be done. Until the process of 'reconstruction had begun and the base exposed to view it was impossible to know what its condition was, and what part of it required reconstructing. The defendant has not supplied us with any other words that would convey a more definite meaning and we cannot think of any such ourselves, we therefore conclude that the counsel did the best they could under the circumstances in using the said words to express their meaning. Besides the work was to be done under the superintendence of the board of public works and could not be considered a delegation of legislative authority.

Exceptions are taken to the action of the court in giving a certain instruction for the plaintiff. To this we attach no importance, as the office of an instruction where a case is tried by the court serves no purpose except to disclose the theory of the trial. [Peters v. Folockemer, 131 Mo. App. 105.]

There was a mistake in rendering judgment on the first count, in making it a lien on lot 9, in block 22, when it should have been against lot 10, in said block. And a similar mistake in making the judgment on the taxbill in the second count a lien on lot 10 in said addition, when it should have been lot 9. These errors the court is directed to correct. There are other errors assigned, but we believe we have discussed all of any importance. The cause is reversed and remanded to correct the entries.